NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

SALVATORE ALVES, PETITIONER, v. PUBLIC SERVICE PRODUCTION COMPANY, RESPONDENT.

For the petitioner, *Charles Becker.*

For the respondent, *Henry J. Sorenson.*

\* \* \* \* \* \* \*

The petitioner in his claim for compensation alleged that on April 27th, 1927, while he was employed by the said respondent, he met with an accident while he was endeavoring to dislodge a large stone with his hands. After having dislodged this stone, the stone slipped, striking him upon his body in such a fashion as to cause a hydrocele.

The petitioner, in the proof of the above-mentioned allegations in his petition, called Dr. Silverstein as a witness in his behalf. Dr. Silverstein testified that as a result of an examination he made, he was of the opinion that the petitioner was suffering from a left inguinal hernia. In response to a hypothetical question propounded by the attorney for the petitioner, Dr. Silverstein was of the opinion that this existing left inguinal hernia was in all probability caused by the alleged accident.

Dr. Singer was also called by the petitioner and he testified that he also found an inguinal hernia. The examinations made by both of these doctors took place at least six months after the date of the alleged accident and subsequent to the operation performed upon the petitioner on December 3d, 1927; further, that these examinations were made for the express purpose of testifying. The testimony at the close of the petitioner's case clearly showed that there was no proof in his case to sustain a contention that the accident had caused the alleged hydrocele. Therefore, that phase of the case is eliminated from our consideration, but under the proof as submitted by the petitioner's witnesses there may be a possible claim for the left inguinal hernia. The respondent submitted whatever proof it had relative to any such claim. The hospital records, which were received in evidence, showed that the first diagnosis made was acute appendicitis. That diagnosis was made on the day the petitioner was received in the City Hospital, which was April 29th, 1927. Subsequently, the diagnosis was changed to umbilical hernia. After the petitioner had remained in the hospital for two days, he was discharged without an operation being performed for any alleged hernia.

The respondent, in proof of its contention that the petitioner did not sustain a compensable hernia as a result of the alleged accident, produced Dr. Pascal, who testified that the petitioner came to him on the 29th day of April, 1927, with a note stating that the petitioner had been injured in West Orange. Dr. Pascal then examined the petitioner and found that he was tender in the right side and showed signs

of very great pain, but that there were no signs of any left inguinal hernia present at the time of his examination. Dr. Pascal further testified that he made subsequent examinations of the petitioner, but that they were all negative as to any hernia in the left inguinal region. Dr. Pascal further testified that on his instructions the petitioner was taken directly to the Newark City Hospital on the date of the accident. The petitioner also testified that on the day of the alleged injury he was taken to the City Hospital.

The next doctor called in behalf of the respondent was Dr. Seidman, who testified that he, in conjunction with Dr. Obuchowski, operated on Alves in the City Hospital on December 3d, 1927. That at that time, both doctors were under the opinion that the petitioner was suffering from a hydrocele, but upon opening up the entire left side of the said petitioner, it was found that a spermatocele was present. Dr. Seidman testified that if a left inguinal hernia had been present at that time, it would surely have been seen by him because the incision made at the time of the operation was five inches long, running from the groin to the upper abdomen at a diagonal course. He definitely stated that there was no left inguinal hernia present at the time of the operation. Dr. Obuchowski corroborated the testimony of Dr. Seidman in every detail.

The petitioner was examined over a period of time by Drs. Lyons and Hicks, who testified that at the time of their examinations there was no left inguinal hernia present. Dr. Washington examined the petitioner at the time of the hearing in conjunction with Dr. Singer. His testimony was to the effect that at the time of the examination there was a left inguinal hernia present.

After analyzing the testimony of Dr. Pascal and examining the hospital records, I cannot say that the petitioner has conclusively proved that the alleged hernia was immediately caused by such sudden effort or severe strain that the first descent of the hernia immediately followed the cause. The fact that the petitioner was released from the hospital two days after his entry without having an operation performed

is a further factor which weighs heavily against the petitioner. Then on the following December the fact that when the petitioner was opened up during the operation for a hydrocele, the doctors that performed the operation did not find a left inguinal hernia forces me to the conclusion that the petitioner up to that particular time was not suffering from a left inguinal hernia which would be compensable under the statute.

The only question being involved in this case is whether or not the petitioner sustained a left inguinal hernia as a result of the alleged accident. This is the contention of the petitioner, because, in his own case, he has eliminated the question of hydrocele and by proper amendment during the course of trial, changed his claim to that of a left inguinal hernia.

Upon the issue as framed and the proof as presented by the respective parties, I find that the petitioner has not sustained the burden of proof in conclusively proving that the hernia was a result of the accident.

\*      \*      \*      \*      \*      \*      \*

HARRY J. GOAS,
*Deputy Commissioner.*